<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 97-1200

                    JES S MIRANDA-GONZ LEZ,

                     Petitioner, Appellant,

                               v.

                         UNITED STATES,

                           Appellee.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

         [Hon. Hctor M. Laffitte, U.S. District Judge]

                             Before

                    Boudin, Circuit Judge,
                                
                Bownes, Senior Circuit Judge,
                                
                  and Lynch, Circuit Judge.
                                
                                
                                
                                
    Rafael F. Castro-Lang for appellant.

    Warren Vzquez, with whom Guillermo Gil, United States
Attorney, Jorge E. Vega-Pacheco, Assistant United States Attorney,
and Camille Vlez-Riv, Assistant United States Attorney, were on
brief for appellee.

                                
                                
                        June 28, 1999
                                
                                
                                
                                
                               

 BOWNES, Senior Circuit Judge.  On April 5, 1993, Jess
Miranda-Gonzlez ("Miranda") pleaded guilty to one count of
distributing cocaine in violation of 21 U.S.C.  841(a)(1).  The
district court sentenced Miranda to a prison term of thirty-three  
months, followed by three years of supervised release, and a $5,000
fine.  
 Miranda subsequently filed a pro se motion seeking to
vacate his plea under 28 U.S.C.  2255, which was later
supplemented with a more detailed memorandum of law once he
retained counsel.  In these documents, Miranda maintained, inter
alia, that he did not voluntarily and intelligently plead guilty
because he was under the influence of certain prescription drugs at
the time.  In the alternative, he argued that his answers during
the plea colloquy were so incoherent that they should have alerted
the judge to postpone the plea and order a psychiatric evaluation.  
 The motion was referred to a magistrate judge, who, after
conducting an extensive hearing, recommended that it be denied.  
The district court adopted the magistrate's findings and
recommendations in their entirety and refused to grant the motion,
ruling that Miranda had knowingly and intelligently entered his
guilty plea.  This appeal followed.
 Because entering a guilty plea is a solemn act involving
the waiver of several constitutional rights, principles of due
process require that a plea "amount to a voluntary and 'intentional
relinquishment or abandonment of a known right or privilege.'"
United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995)
(citation omitted).  Rule 11 of the Federal Rules of Criminal
Procedure sets forth a detailed procedure for accepting a guilty
plea to ensure that a defendant who pleads guilty does so with "an
understanding of the nature of the charge and the consequences of
his plea."  Id. (quoting McCarthy v. United States, 394 U.S. 459,
467 (1969)).  
 A defendant who pleads guilty to an offense and later
attempts to wipe the slate clean bears a heavy burden, for he
"possesses no absolute right to retract his plea."  United States
v. Pellerito, 878 F.2d 1535, 1537 (1st Cir. 1989).  A guilty plea
will not be set aside where a defendant has had a change of heart
simply because he now believes the case against him has become
weaker or because he is not satisfied with the sentence he has
received.  When, as now, a defendant wishes to have his plea
declared invalid due to his use of prescription medication or
illicit drugs, "[t]he mere fact that [he] took potentially mood-
altering medication is not sufficient to vitiate his plea."  Id. at
1542.  Rather, he must show "that the medication affected his
rationality."  Id.  We review de novo the district court's legal
conclusions in denying the  2255 motion, and we defer to any
findings of fact unless clearly erroneous.
 In United States v. Parra-Ibanez, 936 F.2d 588 (1st Cir.
1991), we imposed on district judges a duty to conduct a more
searching inquiry into the contemporaneous effects of medication on
a defendant's ability to render a knowing and intelligent plea when
they are alerted to the fact that a defendant has recently ingested
drugs.  Accord United States v. Cole, 813 F.2d 43, 46-47 (3d Cir.
1987).  Confronted with a situation in which the district court
ignored obvious signs of a possible mind-altering influence, we
remanded the case for further factfinding by the district court as
to the chemical properties of the medication and the defendant's
particular medicinal regimen.  See 936 F.2d at 598.  Arguing that
his guilty plea is similarly suspect, Miranda seeks to shoehorn his
situation into our holding in Parra-Ibanez.  But try as he might,
it does not fit.
 Unlike in Parra-Ibanez, once put on notice that Miranda
had been taking Xanax and Ativan, the court here conducted an
extended colloquy to ascertain Miranda's reasons for taking the
medications, the frequency with which he took them, the dosage of
each, and the effects of the drugs on his cognitive functions
during the change of plea hearing:
   THE COURT:  Have you taken any medicine,
 pills, drugs or alcoholic beverages in the
 past 24 hours?

   THE DEFENDANT:  Yes.  I'm taking Xanax and
 Ativan.

   THE COURT:  What's that for?

   THE DEFENDANT:  For my nerves so I can relax.

   THE COURT:  Now, when was the last time that
 you have these pills?

   THE DEFENDANT: I take them in the morning and
 in the evening.

   THE COURT:  So last night you took these
 pills?

                      THE DEFENDANT:     Yes, this morning.

   THE COURT:  And this morning?

   THE DEFENDANT:  And this morning.

   THE COURT:  Now, this Ativan and Xanax, with
 "X", Xanax, that's an anthiolithic [sic], that
 is, to sort of calm your nerves, isn't it?

   THE DEFENDANT:  Yes.

   THE COURT:  And does that in any way cloud[]
 your thinking or put[] you drowsy or make[]
 you drowsy or in any way impair your mental
 process?

   THE DEFENDANT:  Sometimes I have blackouts.

   THE COURT:  But now let me -- let's talk about
 now, today, now.  You took those pills this
 morning, and my question to you is whether
 those pills have in any way affected your
 capability or ability to understand today's
 proceedings.

   THE DEFENDANT:  No.

   THE COURT:  They don't affect you?  You have
 to voice your answer.

   THE DEFENDANT:  No, no, no.

Following this inquiry, the court then asked several questions of
Miranda to probe his comprehension of the crime with which he was
charged and the specific purpose of that day's proceedings.  
Miranda briefly consulted with counsel and answered that he was
present to change his plea to guilty "for the sale of an eighth
. . . [o]f cocaine."  
 We believe that the judge faithfully conducted the
requisite Parra-Ibanez inquiry and was satisfied that in his
medicated state Miranda fully understood the nature of the hearing
and the gravity of his decision to plead guilty.  The record amply
supports that determination.
 The cases cited by Miranda do not compel a contrary
result.  The absolute failure to investigate further once apprised
of the recent ingestion of drugs doomed the plea entered by the
defendants in Parra-Ibanez and Cole, while the judge here properly
asked probing follow-up questions.  
 Manley v. United States, 396 F.2d 699 (5th Cir. 1968),
similarly offers Miranda no solace.  In Manley, the Fifth Circuit
invalidated a defendant's plea where he was given two injections of
narcotics immediately before tendering his plea.  Because the
defendant had difficulty communicating with his own lawyer and the
government misrepresented the nature of the injections to the
district court, the court of appeals found itself unable to say
with any measure of certainty that the medication did not impair
his judgment in deciding to plead guilty.  See 396 F.2d at 701.   
 Ours is a different situation altogether.  The district
court spent considerable time delving into the details surrounding
the defendant's use of the medicine during the actual plea hearing;
the magistrate judge later allowed Miranda to further develop the
record during the habeas hearing.  Miranda does not contend that
either judge misapprehended the risks of the medications or was
misinformed about their effects.  On the whole, the determination
that Miranda was of sound mind when he pleaded guilty to
trafficking in cocaine was based on reliable evidence.
 Finally, Miranda has a fallback position:  he insists
that his answers during the plea colloquy showed that he was so
incoherent that the court should have postponed the proceedings sua
sponte and ordered a psychiatric review.  We disagree.  From our
review of the transcript, Miranda's responses did not reflect a
patent lack of lucidity.  To the contrary, we discern nothing that
would have warranted a departure from the scheduled proceedings.  
Despite having taken prescription medication that morning, Miranda
signaled that he understood the purpose of the hearing; he was able
to communicate with his lawyer; and he spoke clearly and
responsively in answering the judge's inquiries.  Although he said
that he sometimes had difficulty concentrating and occasionally had
what he called "blackouts" while on his medication, he acknowledged
that he was experiencing no problems during the plea hearing.  As
his own expert later attested, he was taking only mild tranquilizer
twice a day to control his bouts of anxiety.  Our conclusion is
bolstered by the record of the hearing held by the magistrate judge
on the  2255 motion, which established, among other things, that
there existed no reason to believe that Miranda was experiencing
psychosis or that he suffered from any serious mental illness at
the time of the change of plea hearing.  While we can envision a
set of circumstances under which a colloquy might give rise to
further concerns about a defendant's capacity to fully comprehend
his actions, the exhaustive on-the-record discussion here provided
no warning flags warranting more drastic action.   
 We note, moreover, that the district court took great
pains to ensure fairness, asking both the prosecutor and defense
counsel whether either had any doubts as to Miranda's competence to
enter the guilty plea, in light of the disclosures concerning his
medication and recent psychiatric history.  Neither voiced an
objection.  Under the circumstances, the judge did all that was
required of him.   
 For the reasons set forth above, we affirm the district
court's denial of Miranda's  2255 motion.

</body>

</html>